DAVID J. MILLSTEIN (SBN 87878)
DMillstein@millsteinfellner.com
KEVIN D. CARDONA (SBN 314033)
KCardona@millsteinfellner.com
MILLSTEIN FELLNER LLP
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336

**Attorneys for Plaintiff**
HUNDRED ACRE WINE GROUP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HUNDRED ACRE WINE GROUP INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TWO 4 STU, LLC, a California limited, liability company dba LERNER PROJECT; STUART JAY LERNER, an individual; VINE VAULT LLC, a Georgia limited liability company; and ELTON POTTS, an individual<br><br>Defendants. | Case No. **3:22-cv-07305-JD**<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date: February 2, 2023<br>Time: 10:00 a.m.<br>Courtroom 11<br>Judge: Hon. James Donato<br><br>Action Filed: 11/18/2022 |

I. **Introduction**

Plaintiff Hundred Acre Wine Group ("Hundred Acre" or "Plaintiff")'s Motion for a temporary restraining order ("TRO") and preliminary injunction[1], should be granted to enjoin Defendants from engaging in violations of California law, federal law, and a violation of a valid and enforceable nondisclosure agreement ("NDA"), specifically to enjoin Defendants from:

a. using, copying, disclosing, disseminating or selling any and all of Plaintiff's customer identifying information, shipping data, and purchasing history that was shared by Plaintiff with VINE VAULT LLC in the course of VINE VAULT LLC rendering shipping services to Plaintiff at any time, and derivative data or data related to those customers or shipments created by any Defendant ("Hundred Acre Customer Data");

b. selling wine to persons whose identity Defendants acquired as a result of information provided by Hundred Acre Customer Data;

c. sending direct marketing communications or advertising to customers who were acquired from the Hundred Acre Customer Data;

d. deleting any hard copies or electronic copies of the Hundred Acre Customer Data in their possession, custody, or control, or that of their agents or principals.

Plaintiff established that the Hundred Acre Customer Data constitutes a trade secret. (Plaintiff's Notice and Motion for Temporary Restraining Order and Preliminary Injunction at p.2; lines 1-19). Plaintiff also made a clear showing that (i) it is likely to prevail on the merits, (ii) it will suffer irreparable harm if the TRO and preliminary injunction is not issued, (iii) the balance of equities falls in favor of granting the TRO and preliminary injunction, and (iv) it is in the public interest to issue the TRO and preliminary injunction. Plaintiff's clear showing of these factors is further supported by Defendants' failure to refute, let alone address, several of the critical allegations against them for misappropriation of trade secrets.

---

[1] Plaintiff previously applied for a Seizure Order. The Court in denying the application indicated, inter alia, that since Plaintiff had filed the Complaint at the same time it made the request, there was nothing to be gained by surprise. Plaintiff, however, notes that it had not filed the complaint at the time of making the application for a seizure order for that very reason and which is reflected by the Court's docket. Plaintiff did not re-raise this issue to the Court, however, given the overall nature of the remainder of the order

-2-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Defendants Elton Potts and Vine Vault LLC have filed an answer but did not file any opposition to this Motion for TRO, and unlike Defendants TWO 4 STU LLC or Stuart Jay Lerner they did not request an extension of time to file an opposition the Motion and therefore waived their right to do so. The Court should thus grant the TRO as to Defendants Elton Potts and Vine Vault LLC without further consideration.

## II. The Hundred Acre Customer Data constitutes a trade secret pursuant to 18 U.S.C. § 1839(3).

Hundred Acre Customer Data, as defined above, constitutes a protectable trade secret under 18 U.S.C. § 1839(3). This has been well established by the Plaintiffs and is not disputed by Defendants.

## III. Plaintiff's Motion for TRO and preliminary injunction clearly satisfies all four Winter v. NRDC factors.
### a. Defendants have either failed to refute or address Plaintiff's evidence of trade secret misappropriation, making it likely that Plaintiff will prevail on the merits.

Lerner barely refutes the testimony of Matt Simpson. Potts, too does not deny that he provided Lerner with shipping information; instead he meekly declares that he never gave a "customer list." Vine vault had shipping information and that is what was provided to Simpson, which contained amounts of wine, when shipped, as described in Woodbridge's declaration. Further, Potts does not deny that he provided shipping invoices and orders to Lerner. In place of denial, Defendants attack Simpson's character.

Likewise, the Defendants discussion of derivation or reverse engineering of the trade secret is unavailing. It is possible that some of the customers the Lerner Defendants and Plaintiff have in common were derived independently. However, the evidence presented by Plaintiff shows that Defendants misappropriated customer information from Plaintiff, the full extent of which is still unknown. The evidence presented by Plaintiff shows that of the unique email addresses associated with Hundred Acre wine orders *fulfilled through Vine Vault* from October 14, 2019, to June 9, 2020, about 46% also appear on the list of customer email addresses that

-3-

Lerner Project added during the same time frame. (Declaration of Kevin Cardona "Cardona Decl." at ¶ 8).  Matthew Simpson's declaration and testimony has and will establish that Defendant, Stu Lerner, handed him (Mr. Simpson) a folder full of Hundred Acre's customer data and told him to enter it into Lerner Project's CRM database. (Declaration of Matthew Simpson "Simpson Decl." at ¶ 2). At this stage of litigation, without being afforded the opportunity to conduct discovery, it would be an unfair burden to require Plaintiff to prove the entire extent of Defendants' trade secret theft or misappropriation, where the names came from, and whether Lerner can show independent acquisition.

It is telling <u>that Lerner does not provide the Court even one Hundred Acre customer he acquired from a legitimate source</u>. He relies on general a supposed "expert" on overlapping customer bases. The facts here are compelling:  Mr. Woodbridge suspecting a thief because of customer complaints.[2], a random person out of the blue Simpson telling him of a theft, the production of evidence verifying that the list grew right after Lerner's request to add the names, and verification that 50% of the new names were Hundred Acre's. A trial will decide who is more credible, where Lerner got the names, but an injunction preventing the use of illegally acquired information is critical and necessary.

The pleadings frame the nature and bounds of the trade secret misappropriation claims. Plaintiff does not and need not allege that the Lerner Defendants built their client base entirely from Plaintiff's customer list, or that the Lerner Defendants necessarily marketed to or sold wine to all of Plaintiff's customers.

---

[2] The suspicion that their well-guarded trade secrets had been misappropriated began well before they even crossed paths with Mr. Simpson. (Woodbridge Decl. at ¶¶ 14-17). Plaintiff first became concerned that Hundred Acre's trade secrets were misappropriated when Hundred Acre customers began reaching out directly to Mr. Woodbridge about receiving unsolicited marketing materials from Vine Vault; specifically, materials marketing Vine Vault events and the sale of Lerner Project wine. (*Id.* at ¶ 14). These Hundred Acre customers would not contact Mr. Woodbridge with their concerns had they received these materials due to the "overlap" between Lerner Project and Hundred Acre customer lists. Mr. Woodbridge first received these complaints from Hundred Acre customers in early 2022, long before Mr. Simpson reached out to him. (*Id.*)

-4-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

These customer complaints led Woodbridge to confront Defendant, Vine Vault – specifically Elton Potts, in June 2022. (Motion at 6:16 -22; Woodbridge Decl. at ¶ 15). Mr. Woodbridge, in response, complained to Mr. Potts about his suspicions Vine Vault had been using shipping information Hundred Acre provided to send Hundred Acre customers marketing emails relating to its wine shows. (Woodbridge Decl. at ¶ 15). <u>Potts admitted to misappropriating the information Hundred Acre provided to Vine Vault for shipping orders and apologized</u>. (Id). Specifically, Potts admitted he had sent out emails to invite Hundred Acre customers to its "road shows." (Id). Nowhere in the Opposition or any of Defendants' accompanying declarations, including the declaration of Mr. Elton Potts, do they deny this admission.

Defendants detail Vine Vault's "road shows" work, how they are a part of Vine Vault's business, and how they promote sales for wineries including Lerner Project. (Opposition Motion 5: 9-18; Potts Decl. at ¶¶ 14-16, 18; Lerner Decl. at ¶¶ 31-32, 34). By using Hundred Acre's trade secret information gathered from the shipping information, Vine Vault began targeting Hundred Acre's customer base, to which it would not have had access absent stealing the information from the shipping orders.

Moreover, unlike the other wineries Vine Vault promotes, Lerner Project is the only winery disclosed that has an ownership interest in Vine Vault. Stuart Lerner and his wife Karen Lerner are one of ten investors in Vine Vault. (Potts Decl. at ¶ 4). Stuart Learner profits from Vine Vault's misappropriation of Hundred Acre's trade secrets gleaned from its shipping orders.

Defendants deny they have ever seen or inputted Hundred Acre's "customer list" to their potential customer list. (Opposition Motion at 21:7-8, 18-20; Lerner Decl. at ¶¶ 49, 78). Plaintiff does not allege that Defendants inputted or ever had a complete "customer list" or access to a complete copy of Hundred Acre's customer data. Instead, Plaintiffs have alleged that the Defendants misappropriated Hundred Acre's trade secrets using printouts of the shipping orders for Hundred Acre that were being fulfilled through Vine Vault. (Complaint at ¶¶ 59 – 60; Motion at 5: 4-7; Simpson Decl. at ¶¶ 6-8) The same shipping orders that Vine Vault has already admitted to misappropriating trade secrets from to send targeted marketing materials to Hundred Acre's confidential and exclusive customers. At no point do Defendants deny receiving

-5-

confidential trade secret information of Hundred Acre through the *shipping information* Hundred Acre provided to Vine Vault, which is what they are alleged to have done. Their denials are far narrower.

The information that can be gleaned from this shipping information is far more valuable than a mere customer contact list. The customer data submitted to Vine Vault included: customer names, customer addresses, company names, name and varietal of wines bought, number of bottles, and price paid. (Woodbridge Decl. at ¶ 12) (Complaint at ¶¶ 87, 97 – 99).

Defendants Lerner and Lerner Project argue that since the entire Hundred Acre list was not on the upload provided by Simpson, so that Hundred Acre's trade secrets could not have been taken. "If Lerner Project received Hundred Acre's customer list, why would Lerner Project only input half of the customers in its CRM system and not the entire list?" (Opposition Motion 16: 18-20). The answer, of course, is that they could have uploaded more over time. Defendants are not accused of misappropriating Hundred Acre's entire customer list – or a list at all for that matter. They are accused of using printouts of the shipping orders for Hundred Acre that were being fulfilled through Vine Vault, who has already admitted to misappropriating information from the shipping orders for the purposes of targeting Hundred Acre's customer base. (Woodbridge Decl. at ¶ 15–16) (Complaint at ¶¶ 59-60). Defendants have not bothered to address or deny the specific allegations underlying this Motion made against them, from which it may be inferred they are true. It is more likely than before that Plaintiff will prevail on the merits.

   **b. <u>Plaintiff has and will continue to suffer irreparable harm if the Court does not issue the TRO and preliminary injunction.</u>**

Defendants argue their misconduct should not be subject to a preliminary injunction because any harm is purely speculative. (Opposition Motion at 18: 3-10). Plaintiff made a clear showing of the harm that has resulted due to the misappropriation of Hundred Acre Customer Data. (Woodbridge Decl. at ¶¶ 14-16, 19-20). Customers began directly reaching out to Woodbridge with concerns of receiving unsolicited marketing materials from Vine Vault and promoting the sale of Lerner Project wines. (Id. at ¶ 14). Plaintiff has also presented evidence of

-6-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

irreparable harm in that the value of its trade secret is necessarily diminished because Defendants acquired Plaintiff's customer data through improper means. Further, the mere possession of the information reduces the enterprise value of Hundred Acre, as the declaration of Jayson Woodbridge establishes.

Unlike the Lerner Project, Hundred Acre does not make its wine available to the general public, it does not promote the sale of its wine at events such as "road shows," it does not network with upward of thirty (30) other wineries where customers are referred within that network, it does not even open its tasting rooms to the general public. (Declaration of Alison Williams "Williams Decl." at ¶ 4; Woodbridge Decl. at ¶¶ 3-7). The promotion and sale of Hundred Acre is done exclusively through its confidential active mailing list to which customers must first submit an application before becoming members. (Williams Decl. ¶ at 4). Hundred Acre goes to great lengths to protect their customers' identities and this is part of the "product" of Hundred Acre – the promise of strict confidentiality and anonymity, a commodity that is so rare today. Hundred Acre goes to great lengths and cost to ensure this vital aspect of their business product. (Woodbridge Decl. at ¶ 6).

"[E]vidence showing that no amount of monetary damages, however great, could address the harm tends to show it is irreparable harm … Where the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable." *Metalcraft of Mayville, Inc. v. The Toro Company*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).

Here, confidentiality the importance of which is so immeasurable and integral to Hundred Acres has been breached. (Woodbridge Decl. at ¶ 4). The harm cannot be measured in pure financial settlement as it has taken over twenty years of time, investment, and dedication to build up this trade secret. Therefore, the irreparable harm that has and will continue to happen necessitates a preliminary injunction.

    c. **The balance of equities necessitates that Defendants be restrained from engaging in acts that violate the law and contractual obligations.**

Despite their assertions to the contrary, Defendants cannot be damaged by being enjoined from continuing *illegal* behavior. (The request for a temporary restraining order and preliminary injunction is narrowly tailored and prohibits defendants from engaging in behavior that violates California law, federal law, and the terms of the nondisclosure agreements. They are free under the injunction to use customer information that they *legally* acquired. The only damage of lost sales will be of sales it was not entitled to in the first place because they would be derived from their own acts of misappropriation.

### d. Issuance of the TRO and preliminary injunction is in the public interest.

The Opposition fails to show that granting the TRO will harm the public interest, specifically that of nonparties to the litigation.

## IV. Laches

The Lerner Defendants argue that Plaintiff delayed in bringing the Motion. Here, the pre-litigation investigatory phase required extensive time to investigate, take steps to analyze the data, prepare the case and Motion for seizure, and TRO for filing. Furthermore, it is well established that "[t]he defense of laches is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change in status quo, ante, i.e., no detriment suffered by the party pleading the laches, his plea is in vain." (emphasis added). (*Conti v. Board of Civil Service Comm'rs* (1969) 1 Cal.3d 351, 359-360.)

Clearly, Defendants have suffered no prejudice in any delay in bringing this Motion. Any delay was necessary to ascertain the viability of this Motion on its merits. Further, Mr. Simpson's availability was limited by his travel schedule (notably, he does not appear to have been served yet). The Lerner Defendants fail to cite any prejudice as a result of delay.

Defendants reliance on *Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018)  (six-year delay and three general elections was too long) is misplaced and is dissimilar from the facts of this case.

## UNCLEAN HANDS

-8-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Defendants likewise argue unclean hands on the theory that the evidence of their crime was "stolen." The accusation is astonishing.   Simpson is a whistleblower providing evidence to a victim and engaging in a protected pre-litigation activity under Civil code section 47.

Further, Defendants Stuart Jay Lerner and Two 4 Stu, LLC (the "Lerner Defendants") do not establish that Lerner Project's customer information constitutes a trade secret. Unlike Hundred Acre's strictly confidential and well-guarded customer data, Lerner Project's customer information does not derive significant independent economic value from being unknown to the general public, nor have they made diligent efforts to protect the secrecy of their customer information. Defendant Stuart Lerner explains at great length how the information of their potential customers often comes from information shared among different wineries, including lists that are emailed to numerous other wineries. (Opposition at 3:25-27, 4:1-12; Lerner Decl. at ¶¶ 23 – 26). Apparently, everyone knows who their customers are.   Moreover, Hundred Acre never obtained the customer data that Matthew Simpson allegedly stole from Lerner Project; rather Hundred Acre's attorneys were given a list, signed an NDA, and analyzed the data for evidence of a crime committed by Defendants and presented this to the Court.

V.     **Conclusion**

As discussed above, Plaintiff has made a clear showing that a preliminary injunction is not only proper, but necessary to prevent further harm in this matter. Defendants have not addressed or denied many of the critical and specific allegations made by Plaintiff in support of this Motion. As a result, to defeat the issuance of a preliminary injunction, Defendants must show they can successfully mount an affirmative defense to those allegations. The courts have held, "the burdens at the preliminary injunction stage track the burdens at trial" and as such "once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007). Defendants put forth only two affirmative defenses, laches and unclean hands, neither of which would be successful at trial.

-9-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Because Defendants neither refuted Plaintiff's affirmative allegations nor successfully established an affirmative defense the Plaintiffs causes of action, Plaintiffs are likely to succeed on the merits. The plaintiff having also established it will suffer irreparable harm, that the balance of equities falls in its favor, the Court should grant its Motion for preliminary injunction.

Dated: 1/13/2023                             MILLSTEIN FELLNER LLP

_____
David J. Millstein
Kevin D. Cardona
Attorneys for Plaintiff HUNDRED ACRE WINE GROUP, INC.

-10-

Case No. 3:22-cv-07305-JD --- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND OSC WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE